The final case on calendar for argument today is Weilbacher v. Progressive Northwestern Insurance. May I try that again? Yes, please. Thank you. May it please the court, counsel? My name is Ken Legacki. I represent Mr. Wahlbecker. Before today, I gave the court two things. One, it was a small bill of the language here, the house language. The other was because in my reply brief, I did not address footnote 4, page 17, under opposition where the progressive stated that I did not raise the issue about an injury in the court below. If you look at the court record, the transcript, it indicates that Judge Burgess found that I did bring up the issue. In fact, it was discussed in our argument. So in case that's a procedural matter, I just wanted to bring up that I did not address my reply brief. Progressive concedes that Mr. Wahlbecker is insured under the policy, he is covered under the policy, that he did suffer tremendous mental anguish, but they state that he's not entitled to a separate per person compensation for the death of his child. They state that although this first language here, subject to liability, you will pay for any claim that you can collect for uninsured motorists under your policy, we are going to limit that to what we consider to be, well, it's unclear to me, and that's the issue why we're here. When I deposed Mr. Quinn, who was the attorney that they stated was the person they consulted with and asked him what was the intent of that particular language, he said it was to limit the amount of money a person could collect no matter how many claims they had. It doesn't, the river is not defined or anything else. So that's why we asked for the drafting history of that policy, to figure out what was intended by this clause down here. And Progressive has no drafting history. They've apparently been misplaced. They have no idea what the intent was of that language. Our cases, Alaska cases, have held that when a parent loses a child, they have a direct independent separate cause of action for their personal loss. I don't think there's any dispute about that. The dispute is whether or not the amount that's due for each person can include that separate injury that was suffered by the parent or whether it's derivative of the injury to the child. That's the issue. I don't think anybody challenges the fact that Alaska law recognizes a separate injury. The question is, is that injury covered or does it exceed the limit under the policy for the each person injury? We can, I would assert no, Your Honor. I would assert that they're entitled to a separate, mainly in several Alaska cases. If you look at Dowdy 1, Your Honor, Dowdy, for example, an NIAD claim would be entitled to a separate person policy limit. But if you look at Dowdy 1, it even, there's a distinction between, they make a distinction between an NIAD claim and a loss of society claim. And in Dowdy 1. What's an NIAD claim? Negligent infliction of emotional distress. Okay. In Dowdy 1, they said for a parent to prevail on a parent parental loss of society claim, the Dowdy's must show that the defendant was negligent, caused the injury, negligently caused the injury or death of a child, and that they suffered mental distress. Apparently, there's no dispute that Mr. Walbecker suffered mental distress. So it is a separate claim. Now, there's, apparently, they're trying to, our statute says, and Swinsky was the latest case, which, by the way, was, came down after Judge Burgess granted some of the judgments, so he did not have the benefit of the Swinsky case. Swinsky states that we recognize as a state statute, specific state statute, that a parent has their own independent claim for the loss of their child. Now, the question is, can they redefine in the contract that they want, can they call it a derivative claim when it seems like our court has stated that emotional distress that a parent suffers is a direct claim? In Thiel, they even mention the word direct. When a parent suffers a loss, it's a direct claim. In Lawrence, our case in Lawrence, the court states, emotional distress concerns injuries that the claimant has suffered directly, rather than derivative injuries that result from an injury to another. So we have Thiel that talks about a parental injury being a direct, and we have Lawrence that refers specifically as a direct injury. And Swinsky, as I mentioned before, goes into a long, or finally, I guess, delineated between a wrongful death statute claim, which I believe this actually refers to, as Progressives stated below, this is a model policy that they have all around the country, and we're trying to find out whether or not the state statute was intended to be included in that policy language. And, like I said, the records are missing. And if you also look at the policy language, they state that if there's any of these clauses that are inviolable to state law, then they're void. That's in the contract itself. So if they try to define a loss of society claim as derivative, when our court indicates that it's a direct claim, an independent separate claim, then I think that clause is inviolable to state law. Now, remember they had their own expert, Mr. Lohr, and I asked him to define what derivative meant. He said, I don't know. I have no idea what that means. And this is the former insurance commissioner for the state of Alaska, who they retained as an expert to show that Mr. Wahlbecker was not entitled to a separate per person limit. And he did not even understand what that language means. Does that mean there's an ambiguity? If the former insurance commissioner cannot figure out what the intent of that language is, or understand the terms of that language, does that mean that Mr. Wahlbecker, a regular consumer, can figure it out? I expect you know that we decide the legal questions, and we decide it based on the record before us as we read it. Don't we? Yes, Your Honor, but I think the court has to take into consideration And here there has been $100,000 paid for the death of the daughter. To the daughter's estate, that's correct. And what you want now, and what I assume you are arguing, is that Mr. Wahlbecker's claim is separate and independent, and not a derivative claim because his injury has nothing to do with what happened to his daughter. No. Your Honor, if you look, he's looking for a statutory claim, a statutory right to collect for a separate independent claim at the death of his daughter because the parental loss of the estate in Gillespie is the greatest loss a parent can suffer. Yes, but you see the problem, and you tell me whether it's a problem or not. The only incident was the death of the daughter, isn't that right? No. What else happened? The daughter died, that's correct. But the parent is now, has been impacted with tremendous mental anguish, which our courts have said, which they themselves have a claim, and under the policy language has suffered a bodily injury because of the great distress that they suffered. So you're saying the distress that the parent suffered equated to bodily injury? That's correct, Your Honor. Now, do you have a case from the state of Alaska that equates emotional distress or anguish to bodily injury? Yes, Your Honor, Lawrence. In fact, at page 1079 of Lawrence, Your Honor. It says it's a separate claim, but it doesn't say it's bodily injury, does it? Well, if you look at the, bodily injury is not being physical, it could also mean mental, if you look at the definition of bodily injury. According to the language in Lawrence that you say equates emotional distress with bodily injury. Where is the precise language in Lawrence that says that? I was looking at the language, Your Honor, of unlaid claims for loss of consortium. What page are you on? I'm sorry, 1079, Your Honor. Unlaid claims for loss of consortium, claims for emotional distress, concern injuries that they claim to have suffered directly. Right, it doesn't say bodily injury. Well, if you look at the definition of bodily injury in the contract, and the record indicates that I asked the adjusters whether or not they considered emotional distress as a bodily injury, and they said yes, it could be considered. If you look at page 1078 of the same opinion that you referenced, it says the parents' injuries, even if the Lawrence parents' injuries did result from their son's bodily injury. So the case characterizes the son's injury as a bodily injury, but does not characterize the parents' injury as a bodily injury. I believe, Your Honor, Lawrence case was reliant upon the Crabtree case out of Louisiana. And, in fact, if you look at, it refers and adopts the Crabtree versus State Farm case out of Louisiana, and it states, the Crabtree court held that the two requirements must be met in order for separate limits to apply. The wife must have suffered bodily injury, and the wife must have suffered the bodily injury in the same action as her husband. We agree with this approach. Therefore, in order for Lawrence parents to be eligible for separate policy limits, they must demonstrate that they suffered bodily injury and that they were injured in the accident. But we don't have in the same action, we have because of. And that's where doubted to comes in. Doubted to made that distinction between in the same accident and because of. If under doubted to, the court said, if the language has said because of, which is listed here, therefore, there would be coverage and there would be a separate bodily injury. But because the language in the policy said it had to be in the same accident, no, they could not collect for the separate bodily injury. So the Doubted To case seems to support our position. What's your client's case for emotional distress and loss of consortium? Loss of society is the term used under the Parent-Child Act, Your Honor, which is mental anguish. And as the Doubted To case said, all's we have to prove there was negligence, the cause of death, which is not disputed, and that the ‑‑ Loss of society is different than mental anguish, right? Your Honor, I think the ‑‑ if you look at Dowdy 1, Your Honor, the elements for mental anguish for loss of society is, and this is at page 343, Your Honor, to prevail on the parental loss of society claim, the Dowdy's must show that the defendant negligently caused the injury or death of a child and they suffered mental distress as a result. And under the Parent-Child Statute, all you have to do is prove that these suffered mental anguish and there was a negligence caused. Counsel, what's your response to the Geico case versus Enchileski? I guess you pronounce it. Enchileski. Enchileski. Enchileski. What's your response to that holding that a loss of society or loss of consortium claim is not a bodily injury, the language in that case? What's your response to that? Enchileski was decided before Dowdy, before Keel, and before Lawrence, Your Honor. In Lawrence, Judge Holland in that particular case actually referenced the Crabtree versus Louisiana case and said no, we're not going to follow that. We're going to follow the other line of cases which he adopted. Judge Holland decided both these cases, both the cases. He decided the Enchileski case too. Right. He decided Enchileski. And he rejected the Crabtree versus Lawrence analysis which the subsequent Alaska State Court adopted in Lawrence. Judge Fitzgerald, are you talking about the Crawford case, Your Honor? No. The Cummings case? No. Holland only had one case, Your Honor. That's the Enchileski. Right. I thought you said Judge Holland did the Lawrence case. No, no, no. I'm sorry. I didn't say that. I just spoke if I could. Okay. All right. Well, your time has expired. We'll give you a minute for rebuttal. Thank you, Your Honor. Okay. Good morning. May it please the Court and Counsel. I'm Aisha Tinkerbrae with Gus and Ned out of our Fairbanks office. Now I'm visiting today where there's less smoke. And I represent a polyprogressive Northwestern insurance company. And as the panel has already noted today, the issue in this case is the legal interpretation of progressives' underinsured motorist bodily injury coverage. Now you know why we use the abbreviation. Get that up. The question is whether the progressives' policy language clearly and expressly includes Mr. Willbacher's loss of consortium and his loss of society claims within the each-person policy limit of the UIMBI coverage that was paid for the estate of Heidi Willbacher. And, Judge Ferris, you're correct. We have paid the full policy limit. It's $100,000 plus add-ons. That check was paid for Mr. Willbacher's loss of consortium and society claims and the underinsured bodily injury claims of both Mr. Willbacher and Kathy Amaro, Heidi's mother. And that was on the check. And he accepted that check, and it has already been paid a few years ago. A key point to keep in mind when we're going through this is that the Mr. Willbacher's progressive policy is not the same as, it's not coextensive as, it doesn't equal what the liability might be to bring this claim against the tortfeasor. We're not talking about the fact that he has a claim that he's never going to be able to bring. This is just what is the insurance coverage for his claim. The panel asked him. And in order to answer that, we look to the policy document. Okay. And that's exactly what the district court and elastic case law says, is we look to the policy. I was at the luncheon yesterday. You asked for my best case. Well, my best case is Dowdy 2. It came down a few months after the decision in this case, and it's exactly the same. If you change the name Dowdy to Mr. Willbacher, in that opinion, you will get the same facts. In Dowdy 2, the court was actually dealing with an NIED claim, which is a negligent affliction of emotional distress. I am a little uncertain as to whether or not we have an emotional distress claim in this case or a loss of consortium society claim. In the request for admissions at the trial court level, Mr. Willbacher clearly admitted he was claiming loss of consortium slash loss of society, kind of a combo there, under Alaska Statute 91510. But he was not claiming any negligent affliction of emotional distress. This was not an emotional distress claim. This was a loss of consortium. But the reality is now that we have Dowdy 2, it doesn't make any difference. Once the court in Dowdy 2 was looking at the NIED claims, because the loss of consortium claims in that case, which were separate claims, were not appealed, Dowdy went back on remand in the trial court. The trial court granted summary judgment on the loss of consortium claims because they were derivative under the policy. There was no more coverage. The NIED claims went to the arbitration panel. They were found to be valid, but when they came back on appeal, the court said that the parents could not recover separate, each person underinsured bodily injury policy limits for their emotional distress claims, for their NIED claims. And it's like the court has asked the question, could a reasonable person expect that policy language providing coverage for damages due to the bodily injury of two or more persons in the same accident would apply to the Dowdy's who were not in the accident with their daughter, did not witness it, and did not come upon it shortly after it occurred? And the answer is no. And we have the exact situation here. Mr. Wheelbacher was not in the accident with his daughter. He did not witness the accident. He was in Kenai at the time the accident was here in Anchorage, and he did not witness it shortly after it occurred. There simply is no more coverage. His claim has been paid. The court in Dowdy too also was talking about the coverage and arbitration issues, and they have strongly suggested in that, in their statement, that loss of society claims and NIED claims don't require a showing of physical injury. And they were talking about that. And therefore, the arbitration panel would not have reached the issue when they were deciding whether or not they had meritorious claims, of whether or not the Dowdy suffered bodily injury. By saying that, it's very clear that bodily injury is going to require some kind of physical harm, some kind of physical injury. Loss of consortium in and of itself, or even emotional distress, is not bodily injury. And there is a lot of case law on that that is out there. If I can find it. Mr. Rehlbacher, because he did not suffer bodily injury in the accident, he is not entitled to his own, each person, two people under the policy language. That would be two people in order to reach the each accident. I know Mr. Rehlbacher mentioned the Teal decision, where the court was focused. Well, actually, we're missing a section. The court was focused on the rest of this. This is incomplete. And there are prongs under this that require you to determine whether or not somebody is an insured person. The question in Teal was, was the mother an insured person because her child had been injured in an underinsured motorist vehicle? And the court said, yes, because her injury stemmed from her child's injury, she was an insured person. The court in Teal, however, never got to this part of the policy. So we don't know what state she was an insured person, but we don't know whether or not the coverage, whether or not she was entitled to the each person, or whether or not you could take the position. I can't answer that. We do acknowledge, I mean, a claim for loss of consortium and loss of society is a significant loss. That is a tremendous, tangible, real issue for a parent, and I can't even imagine having to go through it. But it is not bodily injury as defined by the policy, or as we take it in the plain meaning of everyday language. This is a defined policy term. Bodily injury means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease. That does not include loss of consortium. Loss of consortium does not arise out of the bodily injury to the person suffering the loss. It arises out of the bodily injury to the loved one. And the fact that you may have physical manifestations, you may be nauseous, you may get sick, you may have meds or headaches or consequences, those are simply damages that arise out of that. They go to your damages issue, but they don't create, they don't turn loss of consortium into a bodily injury. And that's actually from the Warner case. It was talking about how the distinctions between the two. The Alaska case law on this is actually very clear. The district court followed Alaska's Supreme Court's guidelines on how to interpret the progressive's policy. It recognized that this was an independent claim. However, the coverage for the claim is controlled by will, which includes loss of, specifically includes loss of consortium and loss of society, and with the each-person policy limit for the one person, Heidi Rohbacher, who was injured in the accident. Mr. Bugaki mentioned that an NIAID claim is entitled to a separate policy limit. That is no longer true, if it ever was. The Audi II is an NIAID claim, and it specifically rejected that argument, that an NIAID claim being a direct claim rather than a derivative claim, and going through is entitled to a separate policy limit. You know, your voice fades down. I can strain and hear you, but you don't want me to have to strain. Outdoor voice? I usually have the other problems, so I'm trying to tone it down, too. The Crabtree case has been mentioned. There is a, as an aside, it's a very easily distinguished case. In that case, Mrs. Crabtree was right behind her husband when he was hit on his motorcycle. She was literally in that accident. So, she did have different types of claims. She had her emotional distress claim, but she was actually physically in the accident with Kurtz. I mean, she saw the whole thing. We don't have that here. Mr. Wilbacher was nowhere near the accident, which is probably, I would think, a good thing. Unless the Court has any questions for me, Your Honor, the District Court's opinion is well-reasoned, follows Alaska case law. The Audi II gives us the answer that we need in this case. I don't really have anything else to add. All right, thank you, counsel. We'll give you one minute for rebuttal. Thank you. Thank you. In Audi II, which they adopt, the Court made that distinction in the policy language. They said, we reject the argument on the ground that because of language was broad enough to encompass that claim, an IED claim. The language in the State Farm case below did not include the because of that this language does. In the Thiel case, they stated, we therefore conclude a party who has met the burden of proving his or her IED claim would satisfy the causal requirement between the accident and the injury that the Allstate policy requires. That's the same, because of language that was in Thiel, the Allstate policy is very similar to progressive policy language. And so because of that accident, Mr. Glaubacher suffered a tremendous mental anguish. And under the definition of bodily injury, emotional distress or any injury, it's not only physical injury, but it's any illness or sickness that one develops. And when the record below shows, and it's in the... Was it because of the accident or because of the death of his daughter? Well, either or, the accident or the death. But the cases say because of any injury or death. So I guess if the accident caused it, I guess it did. It's because of the accident. And if you can collect under the parent-child statute, I mean, it's a statutory claim, if a child is either injured or killed, according to Kowinski. So if a child has a mother, she has $100,000, as you read the policy. If she has a father, he has $100,000. If she's killed, she has $100,000. This language would bring that about, I gather, from your argument. This is obviously a divorce, and in the arbitration made, Liberty Mutual... No, no, I'm assuming a hypothetical case where there's a mother, a father, and the daughter. The daughter is killed, $100,000, by the language of the policy. In your view, in that hypothetical, the mother would have $100,000. The father would have $100,000. And that's all should be considered as you fix a premium on the policy, I gather. And this policy covered that. The mother could get $100,000, yes. Her insurance policy, which is separate, she could get $100,000. All right, thank you, counsel. Thank you to both counsel. The case is submitted for decision by the court. That concludes our oral argument calendar. We stand in recess until 9 o'clock a.m. tomorrow morning. All rise. This court for this session stands adjourned. Thank you. Thank you. Thank you. Are you all finished? You can come back tomorrow. I am finished. So, who did we get? Five. Five minutes. That's all I can guarantee that. Thank you. I don't mind coming back. All right. Thank you. I'm different. Yeah. Okay, good. You're a federal court member. Yeah. Thank you. Hamilton County. Chief court reporter. Oh. Obviously, you're based off the chief court reporter. Yeah. I got to go through those when I was a kid. Thank you.
judges: Farris, Thompson, Rawlinson